# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

JAMAL E. COLLINS,

        Plaintiff,

    v.

FNU CLARK, CARL FAULKS, and
ELIZABETH MARTYN,

        Defendants.

CIVIL ACTION NO.: 5:21-cv-63

## REPORT AND RECOMMENDATION

Defendant Faulks filed a Motion for Summary Judgment.  Doc. 72.  Plaintiff filed a

Response.  Docs. 92, 93, 95.  Defendant Faulks filed a Reply.  Doc. 97.  For the following

reasons, I **RECOMMEND** the Court **GRANT** Defendant Faulks's Motions for Summary

Judgment, **DISMISS** Plaintiff's claims against Defendant Faulks, and **DENY** Plaintiff *in forma

pauperis* status on appeal.[1]

## PROCEDURAL HISTORY

Plaintiff, proceeding pro se, brought this 42 U.S.C. § 1983 action, alleging violations of

his constitutional rights during his incarceration at Ware State Prison.  Doc. 1.  After conducting

frivolity review, the Court permitted Plaintiff to proceed with Eighth Amendment deliberate

---

[1]    Defendants Clark and Martyn also filed motions for summary judgment.  Docs. 73, 81.  I will
address the other motions separately.

indifference to serious medical needs claims against Defendants Clark, Faulks, and Martyn.[2]

Doc. 17.

Relevant to this Report, Plaintiff alleged in his Complaint Defendant Faulks, a doctor at Ware State Prison, wrongfully ordered Plaintiff's walking cane confiscated on or about May 22, 2020.  Doc. 1-1 at 2, 5–6.  Plaintiff alleged Defendant Faulks got angry with Plaintiff while discussing Plaintiff's blood pressure and Tylenol No. 3 medication prescriptions.[3]  Id. at 5–6.  Plaintiff also alleged Defendant Faulks ordered two correctional officers to confiscate Plaintiff's cane because Plaintiff refused to take his blood pressure medicine.  Id.  Plaintiff generally alleged all Defendants retaliated against him because he filed an earlier lawsuit against Defendant Martyn and Ware State Prison's former medical director, Dr. Thomas Ferrell.  Doc. 1 at 5.

## UNDISPUTED MATERIAL FACTS

### I.    Defendant Faulks's Statement of Material Facts

Defendant Faulks submitted an SMF in support of his Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1.  Doc 72-2.  Defendant Faulks's SMF relies on: Plaintiff's Complaint, doc. 1; Faulks's own affidavit, doc. 72-

---

[2]     Plaintiff filed an Amended Complaint, asserting claims against three additional Defendants.  Doc. 35.  Plaintiff stated in the Amended Complaint, "Defendant Faulks' allegations and legal claims, by Collins, remain the same: except add sued in his official capacity!"  Id. at 3.  The Court dismissed the three additional Defendants because Plaintiff failed to state a claim against them.  See Docs. 102, 104.  Here, I consider Plaintiff's original Complaint (which contains the factual allegations concerning Faulks) and the Amended Complaint (which states Plaintiff is also suing Faulks in his official capacity) together for the purposes of resolving Defendant Faulks's Motion for Summary Judgment.

[3]     In the Complaint, Plaintiff appears to only assert one claim against Defendant Faulks based on confiscation of his cane.  Doc. 1.  However, in the briefing on Defendant Faulks's Motion, the parties fully address issues related to Plaintiff's Tylenol No. 3 prescription.  Apparently, they agree Plaintiff's deliberate indifference claim is also based on Defendant Faulks ending Plaintiff's Tylenol 3 prescription.  Therefore, I treat Plaintiff's claims against Faulks as being based on both the confiscation of the cane and the termination of the Tylenol No. 3 prescription.

2

3; the transcript of Plaintiff's deposition, doc. 72-4; the declaration of Dr. Thomas Ferrell, doc. 72-5; and Plaintiff's medical records, docs. 72-6 through -11.

Some of Defendant Faulks's assertions are not material to the Motion for Summary Judgment or are not supported by the record. Defendant Faulks asserts immaterial factual details about Dr. Ferrell's treatment of Plaintiff in 2017 and 2018, including Dr. Ferrell's opinions about Plaintiff's use of pain medication. Doc. 72-2 at 2–4. Defendant Faulks does not assert his actions were based on Dr. Ferrell's previous opinions or recommendations or that he was even aware of the circumstances of Dr. Ferrell's 2017 and 2018 treatment of Plaintiff. In his affidavit, Dr. Ferrell does not mention Defendant Faulks or any of Plaintiff's treatment after 2019. Doc. 72-5 at 10. The factual details about Dr. Ferrell's treatment of Plaintiff simply do not affect the outcome of this suit. FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) ("A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))).

Defendant Faulks also makes an unsupported assertion about his reasons for prescribing Plaintiff Tylenol No. 3. Defendant Faulks states in his SMF: "Because the Voltaren cream takes some time to work, because Plaintiff Collins complained of severe pain, and because this was his first encounter with Plaintiff Collins, Dr. Faulks also ordered Tylenol #3 twice a day for 30 days at Plaintiff Collins' request." Doc. 72-2 at 5. Defendant Faulks's cites his own affidavit as support for this statement. But the corresponding paragraph in Faulks's affidavit states: "When I saw [Plaintiff], he complained of severe knee pain. I prescribed Voltaren gel, a topical pain-reliever and anti-inflammatory. I prescribed Tylenol No. 3 for 30 days." Doc. 72-3 at 3. Defendant Faulks says nothing in his affidavit about the time Voltaren cream takes to work or that he prescribed Tylenol No. 3 because this was his first encounter with Plaintiff. Defendant

Faulks does not state he prescribed Plaintiff Tylenol No. 3 at Plaintiff's request. I have found nothing in the record to support these assertions. Accordingly, I do not consider these unsupported assertions in evaluating Defendant Faulks's Motion.

Defendant Faulks also makes unsupported assertions in his SMF about a phone conversation between a prison nurse and Plaintiff's mother. In the SMF, Defendant Faulks asserts the nurse and Plaintiff's mother spoke by phone about Plaintiff's treatment on May 26, 2020, Plaintiff's mother understood the physician did not want to increase Plaintiff's pain medication, and Plaintiff's mother understood the risks of Plaintiff becoming addicted to Tylenol No. 3. Doc. 72-2 at 6. In support of this factual assertion, Defendant Faulks cites a May 22, 2020 medical record related to Defendant Faulks's visit with Plaintiff. Id. The cited record does not mention the purported May 26, 2020 phone call or support the factual assertions in Defendant Faulks's SMF. See Doc. 72-8. I have reviewed the record and have found nothing else to support this assertion.[4] Accordingly, I do not consider Defendant Faulks's unsupported factual assertions in the SMF about a May 26, 2020 phone call in ruling on Defendant Faulks's Motion for Summary Judgment.

## II.    Plaintiff's Submissions

Plaintiff filed a Response in Opposition to Defendant Faulks's Motion for Summary Judgment. Docs. 92, 95. Plaintiff's Response includes an SMF. Doc. 92 at 6–14. Plaintiff cites his medical records, doc. 90 at 4–53, the declaration of Dr. Ferrell, doc. 73-5, and Plaintiff's affidavit, doc. 93. Plaintiff disputes every single statement of material fact in Defendant

---

[4]     A medical record submitted by Plaintiff mentions Plaintiff's mother. A "problem list" record, with a number of entries between 1994 and 2021, contains the following handwritten entry by Defendant Faulks: "Bipolar Depression per history of mother on 5/26/20—Via HAS." Doc. 90 at 12. This uncited record does not support Defendant Faulks's factual assertion. There is no mention of a phone call or a conversation about pain medication.

Faulks's SMF.  However, Plaintiff fails to sufficiently refute Defendant Faulks's SMF because Plaintiff fails to point to anything in the record that undermines or negates Defendant Faulks's factual allegations.

Plaintiff makes the same, unhelpful form objection in many of his responses.  Plaintiff responds to 24 of Defendant Faulks's 50 factual assertions with the following statement: "I genuinely dispute; for because the material cited to [does] not establish the absence of a genuine dispute," citing Federal Rule of Civil Procedure 56.  Plaintiff must do more than simply recite Rule 56(c) and proclaim a dispute.  Plaintiff must show the materials cited do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1)(B).  Plaintiff's repeated form objection does not show Defendant Faulks failed to establish any of these particular facts.

In other responses to Defendant Faulks's assertions of fact, Plaintiff fails to address the factual assertions Defendant Faulks makes, admits the fact within his response, improperly offers arguments, and provides unhelpful citations.  For example, Defendant Faulks asserts opioid pain relievers present the risk of addiction, patients can quickly build a tolerance for them, and Tylenol No. 3 is not safely prescribed as a long-term pain reliever.  Doc. 72-2 at 2–3.  Plaintiff responds, "I genuinely dispute" these assertions "because Dr. Faulks had this knowledge . . . and he still ordered Tylenol No. 3 for my [left] knee pain."  Doc. 92 at 7.  Plaintiff cites a portion of his own affidavit where he states Defendant Faulks examined him before prescribing Tylenol No. 3.  Doc. 93 at 4.  The fact Defendant Faulks prescribed Tylenol No. 3 after examining Plaintiff does not undermine or negate Defendant Faulks's assertion Tylenol No. 3 presents risks.

Similarly, Defendant Faulks asserts he saw Plaintiff for complaints of knee pain on April 30, 2020.  Doc. 72-2 at 4.  Plaintiff responds, "I genuinely dispute; for because on April 30, 2020 Dr. Faulks had subjective-knowledge of that I had an objectively serious medical need."  Doc. 92

at 9.  Plaintiff cites his own affidavit where he describes the conversation he had with Defendant Faulks about knee pain on April 30, 2020.  Thus, Plaintiff's SMF response and supporting citation actually support Defendant Faulks's SMF assertion about the examination of Plaintiff's knee.  Plaintiff's statement of material facts, combined with his affidavit, is riddled with similar insufficient and unhelpful responses to Defendant Faulks's SMF.

I have reviewed the entirety of Plaintiff's filings in response to Dr. Faulks's Motion for Summary Judgment, and I have not identified a single material fact Plaintiff sufficiently disputes and supports with a citation to the record.  For the purposes of this Motion, I accept as true only material facts contained in Defendant Faulks's SMF that are supported by evidence, do not require credibility determinations, and do not include legal conclusions.  Collins v. Okefenoke Rural Elec. Membership Corp., No. CV 213-52, 2014 WL 7440887, at *1 (S.D. Ga. Dec. 29, 2014); EEOC v. Atlanta Gastroenterology Assocs., LLC, No. Civ.A 1:05CV2504, 2007 WL 602212, at *3 n.2 (N.D. Ga. Feb. 16, 2007); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections).  I have fully reviewed the record and have identified undisputed material facts, but it is important to note that "it is not the Court's duty to comb the record to find reasons to deny summary judgment."  Collins, 2014 WL 7440887, at *1.  The facts recited here represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

### III.    Undisputed Material Facts

#### A.    Plaintiff's Tylenol No. 3 Prescription

Plaintiff saw Defendant Faulks for complaints of left knee pain on April 30, 2020. Doc. 72-6. Defendant Faulks charted that Plaintiff's left knee had worsened and the degree of disease control for Plaintiff's left knee was poor. Id. Defendant Faulks ordered Voltaren cream, an anti-inflammatory topical treatment, for 90 days. Id.; Doc. 72-3 at 3. Defendant Faulks also ordered Tylenol No. 3, twice a day.[5] Doc. 72-3 at 3; Doc. 72-6.

Tylenol No. 3 is not safely prescribed as a long-term pain reliever. Doc. 72-3 at 2. It is a blend of two pain relievers: acetaminophen ("Tylenol"), an over-the-counter analgesic; and codeine, an opioid. Id. Opioid pain medication presents a high risk of addiction. Id. Patients can quickly build up a tolerance for opioids. Id.

On May 20, 2020, Plaintiff wrote a letter to Defendant Faulks. Doc. 72-3 at 3; Doc. 72-7. In the letter, Plaintiff stated the Tylenol No. 3 was wearing off too quickly during the day. Id. Plaintiff requested two additional tablets of Tylenol No. 3 at noon, in addition to his morning and evening doses. Id. Plaintiff's claim against Defendant Faulks arises from Defendant Faulks's treatment of Plaintiff in response to the May 20, 2020 letter.

---

[5]    There is some dispute about whether Defendant Faulks prescribed Plaintiff Tylenol No. 3 for 30 or 90 days, but the distinction is immaterial. Defendant Faulks asserts on April 30, 2020, he prescribed Tylenol No. 3 for 30 days, but the record of Plaintiff's April 30, 2020 visit shows Defendant Faulks ordered Tylenol No. 3 "x 90 days." Doc. 72-6. The record of physician's orders shows a handwritten Tylenol No. 3 order "x 90 days" on April 30, 2020, but "90" is crossed out and replaced with "30." Doc. 93 at 24. It is not clear when the change was made. Plaintiff maintains the initial prescription was for 90 days. Ultimately, the difference between 30 and 90 days is irrelevant. The parties agree Defendant Faulks ended Plaintiff's Tylenol No. 3 prescription on or around May 22, 2020, which was less than 30 days after it was prescribed on April 30, 2020. While there may be some genuine dispute about the initial duration of the prescription, the duration itself is not a material fact.

**B.     The Parties' Positions on the Events After Plaintiff's Letter**

The parties disagree on the timeline of actions Defendant Faulks took in response to Plaintiff's letter, but the disagreements are immaterial.  Defendant Faulks does not assign precise dates to his actions.  Instead, he asserts a number of actions he took beginning on May 22, 2020.  See Doc. 72-2 at 5–6.  According to Faulks, he met with Plaintiff to evaluate him on May 22, 2020, two days after Faulks received Plaintiff's letter.  Id. at 5.  Plaintiff demanded Faulks increase his Tylenol No. 3 prescription from two doses to three doses a day.  Id.  Faulks refused to do so, referring Plaintiff to an orthopedist instead.  Id. at 6.  Plaintiff then refused all of his medications and all medical care.  Id.  Faulks discontinued Plaintiff's cane profile and told Plaintiff he was discontinuing it because Plaintiff was not using it for walking.  Id. at 6–7.

On the other hand, Plaintiff contends Faulks talked to Plaintiff in response to the letter on the same day Plaintiff sent the letter, May 20, 2022.  Doc. 93 at 7; Doc. 95 at 6.  Plaintiff contends Defendant Faulks discontinued the Tylenol No. 3 prescription and Plaintiff's blood pressure medication on May 21, 2020.  Doc. 93 at 8–9.  Plaintiff does not dispute he met with Faulks on May 22, 2020, and refused medical treatment, including his blood pressure medicine—Lisinopril[6] and HCTZ.  Id. at 10–11.  Plaintiff contends Defendant Faulks discontinued Plaintiff's cane profile on May 26, 2020.  Id. at 9, 12.  Plaintiff cites records he submitted in support of his timeline.

Plaintiff cites a Ware State Prison Investigative Report in support of his version of events.  Id. at 32.  This Report details a grievance Plaintiff filed against Defendant Faulks.  The Investigative Report shows Plaintiff alleged in a grievance that Faulks talked to Plaintiff about his May 20, 2020 letter only two hours after Plaintiff sent the letter.  But according to the

---

[6]     Plaintiff refers to this medication as "Lisgol," but his medical records identify it as "Lisinopril."

Investigative Report, this all occurred on May 22, 2020—not May 20.  Plaintiff alleged in a grievance the events happened on May 22, 2020, and a witness reported Faulks saw Plaintiff on May 22, 2022, to discuss pain medication.[7]  Id.

Plaintiff also cites a record of physician's orders.  Id. at 24.  This form is divided into five sections containing different handwritten orders in each section.  Each section has spaces for two signatures, one for "Physician's Signature" and one for "Signature."  Id.  The first section of this form is dated January 6, 2020, and does not appear to be relevant to Plaintiff's claims.  The next four sections have the same, illegible signature in the "Physician's Signature" space, which is presumably Defendant Faulks's signature.  Id.  An order for Tylenol No. 3, Voltaren cream, HCTZ, and Lisinopril appears in the second section, dated April 30, 2020.  The third section shows the Tylenol No. 3, Lisinopril, and HCTZ were "D/C," or discontinued.  Id.  The third section also shows, "IM signed refusal take any BP medication."  Id.  The date next to the physician's signature appears to be May 21, 2022.  "Noted 5/22/20" is handwritten above the second signature.  Id.  The fourth entry contains instructions for weekly blood pressure checks, dated May 22, 2020.  The fifth section contains a referral for a mental health evaluation and "D/C cane—as IM does not use for ambulation—potential harm to others."  Id.  This section is dated May 26, 2020.

The Investigative Report does not support a genuine dispute about the date Faulks first met with Plaintiff in person after Plaintiff sent his letter.  The Report shows Plaintiff alleged in a grievance that Faulks talked with Plaintiff on the same day he sent Faulks a letter.  However, the Report shows this occurred on May 22, 2020—two days after Plaintiff sent the letter—consistent

---

[7]     Plaintiff submitted another record with his Complaint, an "Offender Grievance" record, showing the same allegation from Plaintiff and the same report from the witnesses.  Doc. 1 at 21.  This record also shows Plaintiff filed the grievance on May 22, 2020.  Id.

with Faulks's assertions.  This record does not undermine Defendant Faulks's asserted fact he met with Plaintiff in person on May 22, 2020, to discuss pain medication.  To the extent Defendant Faulks talked with Plaintiff on May 20, 2020, after Plaintiff sent his letter, there is no indication what the parties talked about, beyond Defendant Faulks acknowledging receipt of the letter, and, thus, any such conversation has no bearing on this dispute.

The physician's order record creates some ambiguity about when Defendant Faulks discontinued Plaintiff's prescriptions for Tylenol No. 3, Lisinopril, and HCTZ, but the ambiguity is not material.  The date of the physician's signature, May 21, 2022, is inconsistent with Defendant Faulks's assertion he decided to end Plaintiff's Tylenol No. 3 prescription after the May 22, 2022 evaluation.  That said, this physician's order to discontinue the prescriptions shows a second signature on May 22, 2022, and references a document Plaintiff signed on May 22, 2022.  Based on this record entry, with a mix of dates, Plaintiff speculates Defendant Faulks ended his Tylenol No. 3 prescription for non-medical reasons on May 21, 2022, before Faulks examined Plaintiff.  The actual date Defendant Faulks discontinued the prescription is not material because Plaintiff's mere speculation about Defendant Faulks's motivation does not create a genuine dispute about Faulks's asserted motivation.  Whether Faulks signed the physician's order on May 21 or May 22, 2022, Faulks's affidavit establishes he made a medical judgment to discontinue Tylenol No. 3 and treat Plaintiff with other measures.  Accordingly, I adopt the following material facts from Defendant Faulks's SMF, along with clarifying dates consistent with Defendant Faulks's SMF and as supported by the evidence.

### C.   Defendant Faulks's Treatment After Plaintiff Requested More Tylenol No. 3

On May 22, 2020, Defendant Faulks met with Plaintiff in person to evaluate him. Doc. 72-3 at 3; Doc. 72-8.  Plaintiff was argumentative and demanded Tylenol No. 3 three times

per day.  Doc. 72-3 at 4; Doc. 72-8.  Defendant Faulks discontinued Tylenol No. 3 but referred

Plaintiff to an orthopedist for evaluation.  Doc. 72-3 at 3; Doc. 72-8.  Plaintiff signed a refusal

declining all medical care, including Motrin, naproxen, Tylenol, and blood pressure medication,

unless given Tylenol No. 3.  Doc. 72-11.

Defendant Faulks told Plaintiff he was discontinuing Plaintiff's cane because Plaintiff

was not using it for walking.  Doc. 72-4 at 73–74.  Defendant Faulks charted that Plaintiff had

been observed walking without his cane.  Id.; Doc. 72-8.  Defendant Faulks noted Plaintiff

carried the cane around with him until he knew he was being observed.  Doc. 72-8.  Defendant

Faulks believed it was important for Plaintiff to bear weight and walk without a cane to improve.

Doc. 72-3 at 4; Doc. 72-4 at 75.  Defendant Faulks officially discontinued Plaintiff's cane on

May 26, 2020, because Plaintiff did not use it for ambulation and there was a potential for harm

to others if the cane were used as a weapon.  Doc. 72-3 at 4; Doc. 93 at 24.

Plaintiff could walk without his cane.  Doc. 72-4 at 75.  Plaintiff did not need a cane to

walk on flat surfaces.  Id.  Plaintiff testified he needed his cane only to go up and down steps,

though he acknowledged the steps he used were equipped with a handrail.  Id.  Plaintiff would

regularly walk without his cane as "self-therapy" as a part of his physical therapy.  Id.

### D.    Plaintiff's Retaliation Allegations

The Court must address Plaintiff's allegations of retaliation by Defendant Faulks.  It is

important to note Plaintiff does not assert an independent First Amendment retaliation claim in

this case.  Following frivolity review, Plaintiff was permitted to proceed with an Eighth

Amendment claim based on Defendant Faulks's alleged deliberate indifference to Plaintiff's

serious medical needs.  Doc. 17.  Thus, Plaintiff's allegations about retaliation are only material

to the extent the allegations relate to his deliberate indifference claim against Defendant Faulks.

Plaintiff generally contends Defendant Faulks discontinued Plaintiff's Tylenol No. 3 prescription and confiscated his cane for non-medical reasons and argues these non-medical reasons undermine any assertion by Defendant Faulks that he exercised his medical judgment. Plaintiff is imprecise about what those non-medical reasons are, at times indicating the reasons include Faulks's concerns about inmate safety, Faulks's irritation with Plaintiff, or Plaintiff's refusal to take other medications. Among these reasons, Plaintiff also asserts Defendant Faulks acted out of retaliation because Plaintiff filed a lawsuit against Dr. Thomas Ferrell, the former medical director at Ware State Prison, in 2018. Collins v. Ferrell, Civil Action No. 5:18-cv-73 (S.D. Ga. Oct. 28, 2021), appeal docketed, No. 21-14027 (11th Cir. Nov. 8, 2021).

In his Complaint, Plaintiff alleged generally all Defendants retaliated against him, but his specific allegations against Defendant Faulks are devoid of any claim of retaliation. Doc. 1 at 5; Doc. 1-1 at 2, 5–6. In his affidavit and brief filed in response to Defendant Faulks's Motion for Summary Judgment, Plaintiff theorizes his May 20, 2020 letter to Defendant Faulks was diverted to Dr. Ferrell, Dr. Ferrell directed Defendant Faulks to retaliate against Plaintiff by depriving Plaintiff of medical care, and then Defendant Faulks executed that directive. Doc. 95 at 3.

Plaintiff's allegations of retaliation are pure speculation, unsupported by any evidence in the record. Plaintiff relies on his affidavit, where he recites his theory, but the affidavit is not based on any evidence in the record. Plaintiff does not assert he has any personal knowledge Dr. Ferrell directed Defendant Faulks to retaliate. Moreover, in the affidavit, Plaintiff expressly states he has no evidence connecting Dr. Ferrell to any of Defendant Faulks's conduct. Doc. 93 at 15 ("This would be a retaliation case for certain, if I could tie Dr. Ferrell into being at WSP after mid-March 2020 . . . ."). Indeed, Dr. Ferrell's affidavit indicates he was not even working

at WSP during the relevant time period.[8]  Doc. 72-5 at 1 (Dr. Ferrell stating he left his position at WSP in March of 2020, months before Plaintiff wrote his letter).  Thus, Plaintiff completely fails to support his speculation about Defendant Faulks's retaliation, and I give no further consideration to the contention.

## DISCUSSION

### I.    Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson, 477 U.S. at 248, and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

---

[8]      Plaintiff suggests Dr. Ferrell might have still been at WSP in January 2021 and states a medical record identified as "DEF-0410" supports that fact.  Doc. 95 at 13–14.  A portion of that record can be found at Document Number 90 at page 9.  The record in question appears to be from the Bacon County Hospital and Health System and relates to an MRI performed on Plaintiff on January 15, 2021.  The record identifies Dr. Ferrell as the "Ordering Physician" and "Primary Care."  It appears these portions of the record are fields that may be automatically filled.  It is entirely plausible Dr. Ferrell's identification on this record is a vestige from his time at WSP.  Indeed, Plaintiff does not allege he was ever treated by Dr. Ferrell (or even saw Dr. Ferrell at WSP) after mid-March 2020 when Dr. Ferrell left his position at WSP. Even assuming the records show Dr. Ferrell ordered some treatment in January 2021, Plaintiff still fails to show Dr. Ferrell was present at WSP in May 2020.  See Doc. 72-5 at 1 (Dr. Ferrell declaring on December 18, 2020, he was then retired and had left his position at WSP in mid-March of 2020).  Going further, even if Dr. Ferrell were present at WSP during the relevant time, that still would not show Dr. Ferrell received Plaintiff's May 20, 2020 letter and directed Defendant Faulks to retaliate against Plaintiff or Defendant Faulks acted on that direction, as Plaintiff speculates.

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party.  Peek-A-Boo Lounge, 630 F.3d at 1353.  As the Eleventh Circuit Court of Appeals has explained, "The facts at the summary judgment stage are not necessarily the true, historical facts or what a jury may ultimately find. Instead, the facts at this stage are what a reasonable jury could find from the evidence . . . viewed in the light most favorable to the non-moving party . . . ."  Johnson v. City of Miami Beach, 18 F.4th 1267, 1269 (11th Cir. 2021).

II.     **Plaintiff's Eighth Amendment Claims**

Plaintiff alleges Defendant Faulks was deliberately indifferent to his serious medical needs by discontinuing his Tylenol No. 3 prescription and confiscating his cane.

A.      **Legal Standard**

The United States Supreme Court has held the Eighth Amendment "prohibits 'deliberate indifference to serious medical needs of prisoners.'"  Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 103–04 (1976).  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the indifference and the plaintiff's injury.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007)).  The first element is an objective inquiry.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotation and citation omitted).  The second element is a subjective inquiry.  Id.  The element of deliberate indifference requires a showing of: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Id. at 1327 (quotations and brackets omitted).  A mere medical malpractice claim does not amount to a constitutional violation.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Medical prison officials are entitled to utilize their medical judgment when treating inmates.  See id. at 107.  Accordingly, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not amount to a constitutional violation.  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.

1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)).  Prison officials cannot

be held liable under the Eighth Amendment when they provide an inmate with treatment, but the

inmate simply prefers a different mode or method of treatment.  Sifford v. Ford, 701 F. App'x

794, 795 (11th Cir. 2017) (citing Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.

1985)).  Relatedly, a doctor's decision to prescribe a certain type of medication over another is

generally a matter of medical judgment that cannot subject the doctor to § 1983 liability.

See Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011) (citing Adams v. Poag, 61 F.3d

1537, 1547 (11th Cir. 1995)); see also Brennan v. Headley, 807 F. App'x 927, 937 (11th Cir.

2020) (holding a prison doctor's "decision to change [plaintiff's] pain-management regimen

from opioids to non-opioids was a matter of medical judgment") (collecting cases).

The Eleventh Circuit has long held, "[A] defendant who delays necessary treatment for

non-medical reasons may exhibit deliberate indifference."  Bingham v. Thomas, 654 F.3d 1171,

1176 (11th Cir. 2011) (citing Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th

Cir. 1994)).  Even so, the Eleventh Circuit has also recognized constitutionally permissible

considerations when determining the appropriate medical treatment.  For example, courts must

give deference, or "significant weight," to prison security concerns related to medical treatment

decisions.  Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1275 (11th Cir. 2020) (citing

Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014)).  Also, "the Eight Amendment does not

prohibit prison officials from considering cost in determining what type (or level) of medical

care inmates should receive."  Hoffer, 973 F.3d at 1277.

Courts also allow prison officials to consider the risks of addiction and abuse presented

by opioid pain relievers, especially when a doctor provides an alternative course of treatment.

See Ross v. Corizon, LLC, No. 3:14-CV-1311, 2016 WL 7856416, at *4–10 (M.D. Fla. June 16,

2016) (concluding prison doctors replacing Tramadol with alternative treatments was not a constitutional violation where the plaintiff "aggressively demanded certain drugs" and showed other signs of drug abuse); <u>Kister v. Wynn</u>, No. 2:21-CV-222, 2023 WL 8937599, at *7 (M.D. Ala. Dec. 6, 2023) (finding doctor's refusal to administer Tramadol was a "reasonable medical judgment" because "those who take Tramadol may became tolerant of its effects over time and are at risk of addiction," among other things), <u>report and recommendation adopted,</u> 2023 WL 8937580 (M.D. Ala. Dec. 27, 2023).

### B.    Plaintiff's Tylenol No. 3 Prescription

Defendant Faulks contends he is entitled to summary judgment because the undisputed material facts show he used his independent medical judgment to discontinue Plaintiff's Tylenol No. 3 prescription.  Doc. 72-1 at 8–11.  Defendant Faulks also argues Plaintiff has no evidence Defendant Faulks caused Plaintiff any injury.  <u>Id.</u> at 12–13.

Plaintiff opposes Defendant Faulks's Motion for Summary Judgment.  Doc. 95.  Plaintiff argues Defendant Faulks ended Plaintiff's Tylenol No. 3 prescription for "non-medical" reasons. <u>Id.</u> at 3–4.  Plaintiff cites Defendant Faulks's notes stating Plaintiff was argumentative with Faulks and Plaintiff refused to take his blood pressure medication as inappropriate, non-medical reasons for discontinuing his Tylenol No. 3 and his cane.

The undisputed, material facts demonstrate Defendant Faulks's decision to end Plaintiff's Tylenol No. 3 prescription was a matter of professional judgment.  Plaintiff's medical record shows Defendant Faulks discontinued the prescription after Plaintiff reported "[t]he Tylenol No. 3 is wearing off too early" each day and requested more Tylenol No. 3 on May 20, 2022. Doc. 72-7.  Defendant Faulks swears he suspected the pain medicine might be wearing off because Plaintiff might be building a tolerance.  Doc. 72-3 at 3.  Defendant Faulks decided it was

better to discontinue the Tylenol No. 3, which was losing its effectiveness, rather than increase the dose.  Id.

Defendant Faulks decided on a different course of treatment for Plaintiff's pain. Defendant Faulks ended the Tylenol No. 3 prescription on either May 21 or 22, 2022, and left Plaintiff's Voltaren prescription in place.  Doc. 93 at 24.  Plaintiff's medical record shows Defendant Faulks also referred Plaintiff to an orthopedist for his knee pain on May 22, 2020, when Plaintiff met with Defendant Faulks and demanded more Tylenol No. 3.  Doc. 72-8. Plaintiff signed a refusal declining the medical care he was offered, including Motrin, naproxen, Tylenol, and blood pressure medication, unless given Tylenol No. 3.  Doc. 72-11.  These undisputed, material facts show Defendant Faulks made a professional decision to change Plaintiff's treatment, not that Defendant Faulks was deliberately indifferent or disregarded a risk of serious harm.

Plaintiff's conclusory affidavit is not sufficient to create a genuine dispute of material fact about Defendant Faulks's motivations for changing Plaintiff's course of treatment.  Plaintiff swears Defendant Faulks did not "offer[] any medical reason whatsoever" for ending his Tylenol No. 3 prescription.  Doc. 93 at 8.  However, Defendant Faulks swears, based on his own personal knowledge, his treatment was based on a concern Plaintiff might be building a tolerance for Tylenol No. 3 and the dangers associated with opioid pain medication.  Doc. 72-3 at 3.  The contemporaneous medical records support Faulks's concerns.  Plaintiff's letter to Faulks confirms the medication was "wearing off too early[.]"  Doc. 72-7.  It is undisputed Plaintiff signed a refusal of all medical treatment, including his blood pressure medication, "unless given Tylenol No. 3 two tablets twice a day."  Doc. 72-11.  Plaintiff does not demonstrate he has any personal knowledge about Faulks's motivations, outside the reasons Faulks has given.  Likewise,

Plaintiff does not point to any evidence in the record that shows Defendant Faulks discontinued Plaintiff's Tylenol No. 3 prescription for impermissible, non-medical reasons. Plaintiff's baseless speculation does not constitute a genuine dispute about Defendant Faulks's asserted reasons for changing Plaintiff's treatment, which are supported by evidence. Plaintiff merely disagrees with the course of treatment Defendant Faulks ordered. Such a dispute over an inmate's course of treatment does not give rise to a constitutional claim.

      **C.**      **Plaintiff's Cane**

      The evidence also shows Defendant Faulks acted within his professional judgment to confiscate Plaintiff's cane. The record of Plaintiff's May 22, 2020 visit with Defendant Faulks shows Defendant Faulks considered Plaintiff's demonstrated ability to walk without his cane. Doc. 72-8. The record of physician's orders shows Defendant Faulks discontinued Plaintiff's cane on May 26, 2020, because Plaintiff did not use the cane for ambulation. Doc. 93 at 24. Defendant Faulks continued to treat Plaintiff with Voltaren cream and made a referral to an orthopedist. Defendant Faulks also believed it was important for Plaintiff to bear weight and walk without a cane to improve. Doc. 72-3 at 4. These facts demonstrate Defendant Faulks's decision to discontinue Plaintiff's cane was a matter of medical judgment, not deliberate indifference or a disregard for the risk of serious harm.

      Defendant Faulks also noted allowing Plaintiff to continue to use the cane presented a security concern because a cane can be used as a weapon by inmates. The Court gives "significant weight" to the security concerns Defendant Faulks expressed. Such security concerns are a valid consideration, as long as Plaintiff's medical needs were not ignored. See Culver v. Sanders, 608 F. Supp. 3d 1171, 1181 (N.D. Fla. 2022) (finding no deliberate indifference where defendants refused plaintiff a rollator and instead provided plaintiff a two-

wheeled walker they believed was medically appropriate and was less of a security threat (citing Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1275 (11th Cir. 2020))), report and recommendation adopted, 2022 WL 3910497 (N.D. Fla. Aug. 30, 2022); Harry v. Wagner, No. 2:12-CV-643, 2014 WL 2091202, at *7–8 (M.D. Fla. May 19, 2014) (finding no deliberate indifference where defendants confiscated plaintiff's orthopedic comfort boots for security concerns and scheduled plaintiff to be fitted for different orthopedic boots) (collecting cases).

    The record of physician's orders shows Defendant Faulks noted a "potential for harm to others" when he ordered the cane discontinued on May 26, 2020.  Doc. 93 at 24.  The record also shows continued treatment through Defendant Faulks's 90-day order of Voltaren cream and the referral to an orthopedist.  Plaintiff also refused alternative treatments such as Motrin, naproxen, Tylenol.  Doc. 72-11.  This demonstrates Defendant Faulks considered the security issues related to Plaintiff's cane profile but did not ignore Plaintiff's medical needs.  Even if Defendant Faulks were wrong about the potential for harm to others, his mistake would not constitute an Eighth Amendment violation for deliberate indifference.  See Harry, 2014 WL 2091202, at *8 ("Even if, as Plaintiff asserts, the defendants were mistaken . . . that Plaintiff's possession of [orthopedic boots] would have caused a security concern, such a mistake demonstrates mere negligence which is not cognizable in a § 1983 complaint." (citing Estelle, 429 U.S. at 106)).

    In sum, the undisputed material facts demonstrate Defendant Faulks exercised his professional judgment to end Plaintiff's Tylenol No. 3 prescription and to confiscate Plaintiff's cane.  Therefore, Defendant Faulks is entitled to summary judgment on Plaintiff's Eighth Amendment claim.  Defendant Faulks discontinued some treatment (i.e., Tylenol No. 3 and use of a cane), but continued Plaintiff's Voltaren cream treatment and referred Plaintiff to an orthopedist instead.  Plaintiff disagrees with this decision.  Such a dispute over an inmate's

course of treatment does not give rise to a constitutional claim.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendant Faulks's Motion for Summary Judgment.

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendant Faulks's

Motions for Summary Judgment, **DISMISS** Plaintiff's claims against Defendant Faulks, and

**DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge

failed to address a contention raised in the Complaint or an argument raised in a filing must be

included.  Failure to file timely, written objections will bar any later challenge or review of the

Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir.

R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

    **SO REPORTED and RECOMMENDED**, this 15th day of February, 2024.


_____

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA